United States District Court
Southern District of Texas
**ENTERED**
September 22, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SANDRA MENDEZ, individually, | § | |
| and as the Independent Administrator | § | |
| for the Estate of Mark Anthony Galvan, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:21-cv-80 |
| | § | |
| SERGEANT JOHN JONES, | § | |
| OFFICER MARIO ALVARADO, | § | |
| OFFICER CELESTE RIVERA, and the | § | |
| CITY OF BROWNSVILLE, | § | |
| *Defendants*. | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of "Defendant City of Brownsville, Texas' and Sergeant John Jones, Officer Mario Alvarado and Officer Celeste Rivera in Their Official Capacities' Rule 12 Motion to Dismiss for Failure to State a Claim for Relief" and "Defendants' Sergeant John Jones, Officer Mario Alvarado, Officer Celeste Rivera in Their Individual Capacities' Rule 12 Motion to Dismiss for Failure to State a Claim for Relief" (the "Motions"). Dkt. Nos. 8, 9. For the reasons provided below, it is recommended that the Court: 1) **GRANT** both Motions; 2) **DISMISS WITH PREJUDICE** (a) Plaintiff's § 1983 excessive force claim under the Fourth Amendment against the City of Brownsville and against Sergeant John Jones, Officer Mario Alvarado, and Officer Celeste Rivera in their official capacities (collectively, "City Defendants"), (b) Plaintiff's § 1983 excessive force claim under the Fourth Amendment against Sergeant Jones, Officer Mario Alvarado, and Officer Celeste Rivera in their individual capacities (collectively, "Individual Defendants"), (c) Plaintiff's § 1983 excessive force claim under the Fourteenth Amendment against City Defendants, (d) Plaintiff's § 1983 excessive force claim under

the Fourteenth Amendment against Individual Defendants, and (e) Plaintiff's § 1983 family unit destruction claim under the Fourteenth Amendment against all Defendants; and 3) **DENY** (a) Plaintiff's request for punitive damages on all claims against City Defendants, and (b) Plaintiff's request for punitive damages on her §1983 Fourth and Fourteenth Amendment claims against Individual Defendants.

## I.   Venue and Jurisdiction

Venue is proper in this Division and District because the purported events giving rise to Plaintiff's claims occurred here.  *See* Dkt. No. 1 at 4-8 (describing events and omissions occurring in Cameron County, Texas);  28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claims occurred").  The Court has federal question subject matter jurisdiction over Plaintiff's claims alleging violations of 42 U.S.C. § 1983.  *See* Dkt. No. 1 at 8-9; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## II.   Background and Procedural History

This is a Fourth Amendment unreasonable seizure case brought under 42 U.S.C. § 1983 arising out of a police chase and shooting that resulted in the death of Mark Anthony Galvan.  Dkt. No. 1 at 4-8.  On June 17, 2019 at 1:37 a.m., in response to a call regarding an assault allegation, Officer Mario Alvarado pulled over a vehicle Galvan was driving on Medical Street in Brownsville, Texas.  Dkt. No. 12-1 at 13.  Galvan stated to Alvarado that he had argued with his girlfriend and left her residence.  Dkt. No. 1 at 4. Galvan failed to produce his driver license upon request.  *Id.*  Alvarado subsequently asked

Galvan to get out of his vehicle five times.  *Id.*  Galvan did not comply; rather, he shifted his vehicle's gear and fled from Alvarado at a high rate of speed.  *Id.*

Sergeant John Jones and Officer Celeste Rivera joined Alvarado, and the officers pursued Galvan to the dead end of the same street, after which Alvarado exited his patrol vehicle and demanded that Galvan stop his vehicle.  *Id.* at 5. Galvan then turned his vehicle around and, seeing that the officers' patrol vehicles had blocked in his vehicle, drove toward Alvarado.  *Id.*  Galvan then drove onto the front lawn of a residential property.  *Id.*  Alvarado then attempted to open the driver's door of Galvan's vehicle.  *Id.*  Jones advised Alvarado to not stand in front of Galvan's vehicle.  *Id.*

While still on the lawn, Galvan accelerated forward and turned left,[1] and all three officers then discharged their weapons at Galvan.  *Id.*  Galvan's vehicle then struck Rivera's patrol vehicle and came to a standstill.  *Id.*  Galvan raised his hands in the air, and the officers stopped shooting.  *Id.* at 6.  However, Galvan then lowered his hands and drove into Rivera's patrol vehicle a second time, and Alvarado and Jones then discharged their weapons at Galvan again.  *Id.*  Galvan then accelerated and drove his vehicle away from the scene, scraping Jones' patrol vehicle in the process.  *Id.* at 6-7.  Alvarado pursued Galvan onto Boca Chica Boulevard in an eastward direction and then discovered that Galvan had crashed into a palm tree.  *Id.* at 7.  Alvarado called emergency medical services, and later that day, Galvan died from the gunshot wounds.  *Id.* at 8.

On June 14, 2021, Plaintiff filed her Complaint, in which she asserts the following claims:[2] (a) § 1983 excessive force claim under the Fourth Amendment against City

---

[1] Presumably, Galvan turned left in an attempt to drive back onto the street in an effort to flee.
[2] Plaintiff sets forth her claims in three sections, the first of which contains four claims, the second of which contains one claim, and the third of which contains two claims.  Dkt. No. 1 at 8-9.  For clarity, the Court reorganizes Plaintiff's claims.

Defendants; (b) § 1983 excessive force claim under the Fourth Amendment against Individual Defendants; (c) § 1983 excessive force claim under the Fourteenth Amendment against City Defendants; (d) § 1983 excessive force claim under the Fourteenth Amendment against Individual Defendants; (e) § 1983 family unit destruction claim under the Fourteenth Amendment against all Defendants; (f) wrongful death claim against all Defendants; and (g) survival claim against all Defendants.  Dkt. No. 1 at 8-9.

On July 2, 2021, Defendants filed the Motions.  Dkt. Nos. 8, 9.  Defendants did not move to dismiss Plaintiff's claims involving allegations of wrongful death and survival of cause of action.[3]  On July 23, 2021, Plaintiff filed a joint response to both Motions.  Dkt. No. 12.  On August 2, 2021, Defendants filed replies.  Dkt. Nos. 13, 14.

## III.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a cause of action if the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009), the Supreme Court found that Rule 12(b)(6) must be read in conjunction with Rule 8(a).  *Richter v. Nationstar Mortgage, LLC*, Civil Action No. H−17−2021, 2017 WL 4155477, at *1 (S.D. Tex., 2017).  Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) challenge, then, a complaint must contain

---

[3] Although not specified in Complaint, the Court assumes without deciding, that Plaintiff is attempting to plead a claim under §§ 71.002 and 71.021 of the Texas Civil Practice & Remedies Code.

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory[.]" *Id.* at 562.

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* In *Twombly*, the Supreme Court stressed that it did not impose a probability standard at the pleading stage; however, an allegation of a mere possibility of relief does not satisfy the requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A court also need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

### B.    42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress [. . .]

42 U.S.C. § 1983.  Section 1983 does not create substantive rights.  Instead, it creates a private right of action to redress violations of federal law, such as the Fourth Amendment or Fourteenth Amendment, perpetrated by those acting under color of state law.  *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999).  A plaintiff seeking relief under § 1983 must show the following: 1) the conduct complained of was committed under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)).  In interpreting the phrase "under color of . . . State [law,]", the United States Supreme Court has explained as follows:

> [A]ccording to the traditional definition of "acting under color of state law," the defendant in a § 1983 action must have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L. Ed. 1368 (1941)).  In other words, "the deprivation must be caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the [s]tate or by a person for whom the State is responsible."  *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)...."State employment is generally sufficient to render the defendant a state actor."  *West*, 487 U.S. at 49.

*Boyter v. Brazos Cnty.*, No. H-09-4132, 2011 WL 1157455, at *7 (S.D. Tex., Mar. 28, 2011).

### C.    Municipal Liability Under *Monell*

There is a distinction between Fourth Amendment claims made against government officials for actions taken under color of state law and Fourth Amendment claims made against government entities.  While Fourth Amendment claims filed against government officials are deemed individual liability claims, § 1983 suits filed against those same individuals but asserting liability against their government employer are deemed official capacity suits.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Provided there has been sufficient due process, a lawsuit against government officials in their official capacity are "in all respects other than name, to be treated as a suit against the entity[.]" *Id*. at 166.

To prevail on a § 1983 excessive force claim under the Fourth Amendment against a municipality, or against both government officials and their municipality employer, "the plaintiff must show that [1] there was either an official policy or an unofficial custom, [2] adopted by the municipality, [3] that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978)).  In *Monell v. Dep't of Soc. Serv. of City of New York*, the Court held that a local government cannot be sued under § 1983 for an injury inflicted solely by its employees.  *Monell*, 436 U.S. at 694.  In that case, employees of the Department of Social Services and the Board of Education of the City of New York filed suit against the Department and its Commissioner, the Board and its Chancellor, and the City of New York and its mayor.  *Id*. at 660-61.  The employees alleged that the Board and the Department compelled pregnant employees to take unpaid leaves of absence before such leaves were medically necessary. *Id*.  The Second Circuit Court of Appeals affirmed the district court's holding that the municipality was immune from the plaintiffs' § 1983 claims.  *Id*. at 662.

The Supreme Court found that, while municipalities could not be held liable under a *respondeat superior* theory, Congress intended municipalities to be included among those persons to whom § 1983 applies.  *Id*. at 690-91.  In finding that the municipal entity defendants' immunity defense failed and that the plaintiffs could therefore sue the municipal entity defendants directly, the Court held that "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is

responsible under § 1983" and that "[s]ince this case unquestionably involves official policy as the moving force of the constitutional violation . . . we must reverse the judgment below." *Id.* at 694-695.

Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). An action which is not "'pursuant to official municipal policy'" does not create liability for a municipality. *Id.* at 60 (quoting *Monell*, 436 U.S. at 691). An action is pursuant to official policy if it is a decision of a government's lawmakers, an act of its policymaking officials, or in line with "practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

Liability can be created, "[i]n limited circumstances," for a government's failure to train employees concerning "their legal duty to avoid violating citizens' rights." *Id.* This is when a government entity's culpability is "most tenuous," and an entity is only liable if it has been deliberately indifferent to its citizens' rights. *Id.* For a Fourth Amendment § 1983 claim based specifically on a failure to train, the Fifth Circuit requires proof concerning "(1) whether there was an inadequacy in the City's training policy; (2) whether the City was deliberately indifferent in its adoption of that policy; or (3) whether the inadequate training policy directly caused the constitutional violation allegedly suffered[.]" *Darden v. City of Fort Worth, Texas*, 808 F. App'x 246, 249 (5th Cir. 2020).

A § 1983 claim against a municipality based on a failure to train typically requires a showing of a "pattern of similar constitutional violations by untrained employees." *Id.* at 62. However, "in a narrow range of cases," there are violations of constitutional rights which are so predictable that a previous pattern is not needed. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). For instance, arming police officers with firearms and requiring them to arrest fleeing felons makes "the need to train officers

in the constitutional limitations on the use of deadly force []'so obvious'" that failure to do so creates liability.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989).

### D.    Individual Liability and Qualified Immunity

In response to a § 1983 excessive force claim under the Fourth Amendment against municipal employees in their individual capacities, the municipal employees may assert a qualified immunity defense.  Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (alterations in original).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "Qualified immunity . . . should be addressed by a district court in the early stages of litigation."  *Murray v. Earle*, 2008 WL 1744257, at *4 (5th Cir. Apr. 11, 2008) (per curiam) (unpublished opinion) (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).

In deciding a dispositive motion that raises a qualified immunity defense, a court must determine: (1) whether the facts alleged are sufficient to make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009);  *see also Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 622–23 (N.D. Tex. 2019) (in which the district court stated a plaintiff's burden to defeat a defendant's qualified immunity defense raised in a motion to dismiss).  "To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly

established constitutional or statutory rights." *Bradyn*, 407 F.Supp.3d at 624 (N.D. Tex. 2019);  *May v. City of Arlington, Texas*, 398 F.Supp.2d 68, 85 (N.D. Tex. 2019).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed. 2d 523 (1987). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed. 1149 (2011).  "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)). What is "required to overcome a claim of qualified immunity ... [is] not that the specific police action [has] been held unlawful, but only that it be apparent 'in the light of pre-existing law' that such action would be unlawful." *Wagner v. Bay City*, 227 F.3d 316, 323 (5th Cir. 2000) (citing Anderson, 483 U.S. at 640).

## IV.    Discussion

The Defendants have made numerous arguments in moving for the dismissal of most of Plaintiff's claims for failure to state a claim upon which relief can be granted and further argue that Individual Defendants are entitled to qualified immunity.  The Court addresses each argument pertaining to the dismissal of a particular type of claim without regard to whether the argument was raised by a particular Defendant.  A number of

identical issues pertain to multiple Defendants, and Plaintiffs have been given sufficient opportunity to address each argument.

### A.   Plaintiff's § 1983 Excessive Force Claim Under the Fourth Amendment Against City Defendants (*Monell* Claim)

For the reasons below, Plaintiff's Fourth Amendment claim against City Defendants fails.  Lawsuits against government officials in their official capacity assert liability against their employer and are "in all respects other than name, to be treated as a suit against [their employer.]"  *Graham*, 473 U.S. at 165.  Thus, the Court must determine whether Plaintiff's Fourth Amendment claim against City Defendants states a claim for which relief can be provided.

In her Complaint, Plaintiff alleges Brownsville is liable for the death of Galvan due to deliberate indifference in its "policies, procedures, protocols and customs []including but not limited to inadequate training and discipline[.]"  Dkt. No. 1 at 2-3.  Specifically, Plaintiff alleges the following:

> Firing gunshots at a moving vehicle is unreasonable, violates common sense, and goes against basic police protocols and procedures. Not only does such a tactic expose the public to the possibility of being shot, but in the event the driver is killed or incapacitated, the police will have then successfully turned the vehicle into an unguided aimless missile, which would then further expose the public to being run over.

*Id.* at 6.  Plaintiff also alleges the following:

> Utilizing deadly force on a suspect who is attempting to flee is excessive, since it is more force than is reasonably necessary to effectuate an arrest.
>
> . . .
>
> These officers fired their weapons as a direct result of Brownsville's deficient training, supervision, and discipline, or because they were trained to do so.  Such deficient training and/or policies demonstrate deliberate indifference to Mr. Galvan's rights and directly caused his death.

*Id.* at 8-9.

In their Motions, Defendants assert that Plaintiff fails to allege a specific policy or custom of Brownsville of using unconstitutional excessive force in the seizure of suspects. Dkt. No. 8 at 4.  Defendants also assert that Plaintiff has failed to allege any facts in support of her Fourth Amendment claim based on Brownsville's purported failures to discipline and supervise its police officers.  Dkt No. 8 at 4.

Defendants also assert that Plaintiff fails to plead sufficient facts showing that the training procedures of the Brownsville Police Department were inadequate or that it was deliberately indifferent in adopting the training policy.  Dkt. No. 8 at 5-6.  Defendants further argue that Plaintiff fails to identify a specific training program or specific inadequacies in the officers' training.  Dkt. No. 8 at 6.  Defendants also argue that Plaintiff fails to allege that Brownsville acted indifferently or allege any past purported unconstitutional uses of unreasonable force.  Dkt. No. 8 at 6.

In her response, Plaintiff asserts that her Complaint should survive City Defendants' Motion because she alleges therein that the officers, in accordance with their training by the Brownsville Police Department, used unreasonable force by firing their weapons on Galvan when he attempted to flee arrest.  Dkt. No. 1 at 8-9;  Dkt. No. 12 at 13. Plaintiff also alleges that Brownsville's deficient training, supervision, and discipline caused the shooting.  Dkt. No. 1 at 8-9;  Dkt. No. 12 at 13.

Pursuant to the Fourth Amendment, the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV.  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured[.]"  42 U.S.C. § 1983.

To prevail on her Fourth Amendment claim against City Defendants, Plaintiff must identify the following: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citing *Pineda v. City of Houston*, 291 U.S. F.3d 325, 328 (5th Cir. 2002); *Trammell v. Fruge*, 868 F.3d 332, 344 (5th Cir. 2017); *see also Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978); *see also Pierre v. Oginni*, No. 3:17-CV-0259, 2018 WL 4220848, at *3 (S.D. Tex. Sept. 5, 2018) (in which the Court granted the § 1983 defendant's motion to dismiss based on the plaintiff's failure to articulate facts supporting each element of his claim).  Here, Plaintiff fails to allege any specific facts that show that the officers' use of deadly force was a constitutional violation or that it was carried out due to a specific policy of Brownsville.  Thus, to the extent Plaintiff asserts a Fourth Amendment claim based on Brownsville's alleged failure to discipline or supervise, such claim fails.

To prevail on her Fourth Amendment claim based specifically on a failure to train, Plaintiff must show the following: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury.  *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *Trammell*, 868 F.3d at 344-45 (5th Cir. 2017).

Plaintiff cites *Sanchez v. Gomez* and *Brown v. Bryan County, OK* in support of her argument that her Complaint states a claim for relief.  However, in *Sanchez*, the district court denied the municipality's motion to dismiss because the plaintiff in that case had

"pleaded facts suggesting the need [for specific training] was apparent long ago" and "highlighted nine different occasions over the last four years where [the municipality's police officers] appear to be utterly unprepared for various encounters with individuals suffering from mental health crises." *Sanchez v. Gomez*, 283 F.Supp.3d 524, 547 (W.D. Tex. 2017).  The municipality in *Sanchez* is clearly distinguishable from Brownsville because Plaintiff has not alleged a specific pattern of incidents wherein Brownsville police officers appear to be obviously unprepared for encounters with fleeing suspect drivers.

In *Brown*, the Fifth Circuit affirmed a jury verdict for a plaintiff arrestee on her § 1983 claim against a municipality based on a failure to train.  *Brown v. Bryan County, OK*, 219 F.3d 450, 458 (5th Cir. 2000).  In that case, a police officer of the defendant municipality pulled over the vehicle in which the arrestee was riding and removed the arrestee, allegedly using excessive force to do so.  *Id.* at 454.  The arrestee did not attempt to flee.  *Id.*  The Fifth Circuit found that the jury could have reasonably determined that the defendant police department's decision to not provide any mandatory law enforcement training to any of its officers could have been the moving force behind the newly-employed police officer's use of unreasonable force.  *Id.* at 458.  The *Brown* plaintiff is distinguishable from Galvan because Galvan did not stop his vehicle; rather, he attempted to flee twice.

Plaintiff has not pleaded a pattern of similar constitutional violations, as is "'ordinarily necessary'" to state a claim against a government entity for a failure to train. *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 409).  Plaintiff therefore relies on "'single-incident'" liability, which requires showing that failure to train will "so obviously" cause government officials to "make wrong decisions that failing to train them amounts to 'a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at

71 (quoting *Canton*, 489 U.S. at 395).  The Supreme Court has held that the need for training regarding the use of deadly force is obvious.  *Canton*, 489 U.S. at 390 n.10.  However, proof that an "injury or accident could have been avoided if an officer had had better or more training" is insufficient to prevail on an excessive force claim against a government entity.  *Canton*, 489 U.S. at 391.  Plaintiff has not pleaded facts specific enough to show that the purported failure to train "so obviously" caused the officers to make allegedly wrong decisions.  *Connick*, 563 U.S. at 71.

Moreover, it is undisputed that Jones advised Alvarado to not reach his hand into Galvan's vehicle while Galvan was in the process of fleeing.  Dkt. No. 1 at 4.  Jones also advised Alvarado to not stand in front of the vehicle.  *Id.*  Thus, Jones' statements constitute at least some evidence of training with respect to confronting suspects fleeing in a vehicle.

Plaintiff asserts that Brownsville should have trained the officers to never shoot at fleeing felons or moving vehicles.  Dkt. No. 1 at 6 and 8.  However, as a matter of law, neither of these assertions is unconstitutional *per se*.  *Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (where the Supreme Court stated that it had "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment[.]")

Plaintiff's Complaint lacks specific details concerning the proximity of the vehicle to the officers and the dangers the officers faced.  Dkt. No. 1 at 5-6.  However, Galvan clearly fled from the initial traffic stop, drove to a dead end, and then drove erratically near the officers who were on foot.  *Id.*  Galvan clearly then drove onto a residential front lawn, and despite that Alvarado placed his hand on the driver's side door handle, Galvan accelerated his vehicle away from the officers and toward an area where other citizens may have been located.  *Id.*  Thus, as Plaintiff has not specifically pleaded facts showing

that Brownsville's training policy was inadequate, that it was deliberately indifferent in adopting the training policy, or that the policy directly caused Plaintiff's injury, Plaintiff's Fourth Amendment claim based on Brownsville's alleged failure to train fails.

### B.   Plaintiff's § 1983 Excessive Force Claim Under the Fourth Amendment Against Individual Defendants

Plaintiff's Fourth Amendment claim against Individual Defendants also fails. Plaintiff alleges that Individual Defendants' use of deadly force against a suspect who attempted to flee is excessive because it is more force than reasonably necessary to effectuate an arrest.  Dkt. No. 1 at 8.  Individual Defendants assert the defense of qualified immunity in their Motion to Dismiss; they assert that Plaintiff fails to plead sufficient facts regarding each Officer's conduct that, if true, constitute a violation of a clearly established constitutional right.[4]  Dkt. No. 9 at 3.  Individual Defendants further cite multiple Supreme Court opinions, including *Plumhoff v. Rickard* and *Mullenix v. Luna*, in which the Court upheld the qualified immunity of police officers who fired their weapons at fleeing vehicles.  Dkt. No. 9 at 7.

In response, Plaintiff asserts that "the complaint permits the reasonable inference that the officers intentionally got in the way of a fleeing vehicle . . . prior to using deadly

---

[4] Although Individual Defendants brief their arguments in the context of their contention that Plaintiff has failed to state a claim on which relief can be granted, the Court concludes that it should first address whether Individual Defendants are entitled to qualified immunity.  This is because "[q]ualified immunity . . . should be addressed by a district court in the early stages of litigation." *Murray v. Earle*, 2008 WL 1744257, at *4 (5th Cir. Apr. 11, 2008) (per curiam) (unpublished opinion) (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)).  In this circuit, it is established that "[d]iscovery . . . must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995).  If Individual Defendants are entitled to qualified immunity, the Court must dismiss Plaintiff's claims against them without reaching the other grounds of their Motion.  If Individual Defendants are entitled to qualified immunity as to some but not all claims, the Court can narrow its analysis of the Motion to the claims for which Individual Defendants are not entitled to qualified immunity.

force." Dkt. No. 12 at 15.  Plaintiff also cites several distinguishable cases in which officers placed themselves in danger with respect to the § 1983 plaintiff's moving vehicle.  Dkt. No. 12 at 12-13 (citing *Smith v. City of Killeen*, 2018 WL 1199949, at *8 (W.D. Tex. Mar. 8, 2018) and *Edmond v. City of New Orleans*, 20 F.3d 1170, 1170 (5th Cir. 1994)).

Pursuant to the Fourth Amendment, the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV.   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured[.]"  42 U.S.C. § 1983.

Individual Defendants invoked qualified immunity and have moved to dismiss Plaintiff's § 1983 claims; jurisprudence in this area is well settled.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity applies to state officials sued for constitutional violations under § 1983.  *See id.* at 818 n. 30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).  "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009).

In ruling on a qualified immunity defense, the Court must determine the following: (1) whether the undisputed and disputed facts, accepting the plaintiff's version of the disputed facts as true, constitute a violation of a constitutional right; and (2) whether the defendant's conduct was objectively reasonable under established law.  *Carroll v.*

*Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016). Further, "[i]f officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744. A court may address the two prongs of the qualified immunity analysis in any sequence. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Plumhoff v. Rickard*, the Supreme Court held that three police officers who used deadly force to terminate a vehicle chase acted reasonably, on an objective basis, when they fired a total of fifteen shots into a vehicle driven by a suspect who attempted to flee after failing to produce his driver's license during a traffic stop. *Plumhoff v. Rickard*; 572 U.S. 765, 769-70, 777 (2012). After the *Plumhoff* driver initially fled, his vehicle collided with a police car and came temporarily to a standstill. *Id.* at 770. He then placed his car into reverse, made a one hundred eighty-degree arc, and began driving away in the opposite direction. *Id.* The police officers then fired their weapons, which resulted in the driver crashing into a building and dying. *Id.* Significantly, the Supreme Court found that "[u]nder the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [the driver] was intent on resuming his flight[. . .]" and that "[the driver's] conduct even after the shots were fired— as noted, he managed to drive away despite the efforts of the police to block his path— underscores the point." *Id.* at 777.

In *Brosseau v. Haugen*, the Supreme Court held that a police officer, who used deadly force to prevent a suspect from fleeing arrest in a vehicle, did not violate the suspect's Fourth Amendment right. *Brosseau v. Haugen*, 543 U.S. 194, 196-97, 201

(2004).  Significantly, the Supreme Court found that, at the time of the shooting, the police officer feared for the safety of "any other citizens who *might* be in the area."  *Id.* at 197 (emphasis added).

In this case, none of the Individual Defendants intentionally placed themselves in front of Galvan's fleeing vehicle.  Moreover, Jones advised Alvarado to not reach his hand into Galvan's vehicle while Galvan was in the process of fleeing.  Dkt. No. 1 at 4.  Jones also advised Alvarado to not stand in front of the vehicle.  *Id.*  Thus, none of the Individual Defendants had intentionally placed themselves in danger at the time they fired their weapons.

Plaintiff fails to show that the Individual Defendants acted unreasonably or that the facts constitute a violation of a clearly established constitutional right.  Individual Defendants are analogous to the three *Plumhoff* police officers because both sets of officers fired at a driver who, after failing to produce a license at a traffic stop, initially fleeing, and coming to a temporary standstill, accelerated his vehicle in an attempt to continue fleeing.  Dkt. No. 1 at 5; *Plumhoff*, 572 U.S. at 770.  The circumstance faced by Individual Defendants is also analogous to the one faced by the *Brosseau* officer because, at the time of the shooting, the driver had already attempted to flee at a high rate of speed and would attempt to continue to flee toward an area in which other citizens might be located.  Thus, like the Supreme Court in *Plumhoff* and *Brosseau*, this Court finds that Plaintiff has failed to show that Individual Defendants acted unreasonably under established law or that the facts constitute a violation of Galvan's Fourth Amendment rights.

### C.     Plaintiff's § 1983 Claims Under the Fourteenth Amendment

Plaintiff also asserts the following § 1983 claims alleging: 1) excessive force under the Fourteenth Amendment against City Defendants; 2) excessive force under the Fourteenth Amendment against Individual Defendants; and 3) family unit destruction under the Fourteenth Amendment against all Defendants.  Dkt. No. 1 at 8, 9.  Critically, Plaintiff does not plead that Galvan was a pretrial detainee.  Dkt. No. 1 at 4-8.  The Fourth Amendment, rather than the Fourteenth Amendment, is the appropriate standard under which to analyze excessive force allegations in which the plaintiff is not a pretrial detainee. *Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir. 1994).  The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Thus, all three of Plaintiff's § 1983 claims based on alleged Fourteenth Amendment violations fail.

### D.     City Defendants' Request for Dismissal of Punitive Damages Request

Municipalities are immune from the imposition of punitive damages.  *Skyy v. City of Arlington*, 712 Fed. Appx. 396, 401 (5th Cir. 2017).  City Defendants request that the Court deny Plaintiff's punitive damages request.  Dkt. No. 8 at 10.  Plaintiff does not object to this request.  Thus, Plaintiff's request for punitive damages on all claims asserted in the Complaint against City Defendants should be denied.

### E.    Individual Defendants' Request for Dismissal of Punitive Damages Request

Individual Defendants request that the Court deny Plaintiff's request for punitive damages on all claims.   Dkt. No. 9 at 9-10.   As set forth above, Plaintiff's Fourth Amendment and Fourteenth Amendment claims fail.   Thus, Plaintiff's request for punitive damages on her § 1983 Fourth and Fourteenth Amendment claims against Individual Defendants should be denied.

## V.    Recommendation

For the reasons above, it is recommended that the Court: 1) **GRANT** both Motions; 2) **DISMISS WITH PREJUDICE** (a) Plaintiff's § 1983 excessive force claim under the Fourth Amendment against City Defendants, (b) Plaintiff's § 1983 excessive force claim under the Fourth Amendment against Individual Defendants, (c) Plaintiff's § 1983 excessive force claim under the Fourteenth Amendment against City Defendants, (d) Plaintiff's § 1983 excessive force claim under the Fourteenth Amendment against Individual Defendants, and (e) Plaintiff's § 1983 family unit destruction claim under the Fourteenth Amendment against all Defendants; and 3) **DENY** (a) Plaintiff's request for punitive damages on all claims against City Defendants, and (b) Plaintiff's request for punitive damages on her §1983 Fourth and Fourteenth Amendment claims against Individual Defendants.

## VI.    Notice to Parties

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a Magistrate Judge's Report and Recommendation within fourteen

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds; 28 U.S.C. § 636(b)(1).

**SIGNED** on this **22nd** day of **September, 2021, at Brownsville, Texas.**

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**